United States District Court
Southern District of Texas
**ENTERED**
January 22, 2024
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:22-cv-280

FRED RAHDAR, *ET AL.*, *PLAINTIFFS*,

v.

CITY OF FRIENDSWOOD, *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Defendants City of Friendswood, along with seventeen named Friendswood police officers ("Officer Defendants") and four Friendswood fire marshals ("Fire Marshal Defendants"), have moved to dismiss all claims under Fed. R. Civ. P. 12(b)(6). Dkt. 55. The court grants the motion in part and denies it in part.

## I.    Background

Plaintiffs Fred Rahdar and his wife, Kobra Ghorbani, are owners of "Friends Pub" in Friendswood. Dkt. 54 ¶ 3. Their claims relate to four separate police interactions spanning from July 2020 to February 2021.

The first arrest took place at Friends Pub on August 3, 2020. *Id.* ¶ 6. Officer Milling and Officer Dement arrested Ghorbani for refusing a "bar check" under Texas Alcoholic Beverages Code §101.04. *Id.* Ghorbani refused the bar check because the same officers conducted three bar checks per day each of the prior four days. *Id.* ¶ 7. As the officers began to arrest Ghorbani, Rahdar objected, stating that if the officers were to arrest his wife, they would "have to arrest him too." *Id.* ¶ 10. Rahdar was subsequently arrested and suffered a shoulder injury while being handcuffed. *Id.* ¶ 11.

The second arrest occurred on September 7, 2020. *Id.* ¶ 15. Two officers, not identified in the complaint, arrested Rahdar for resisting arrest the month prior. *Id.*

The third arrest took place on New Year's Eve, minutes after the calendar turned to 2021. *Id.* ¶ 16. To ring in the new year, individuals, but not the plaintiffs themselves, launched fireworks from the Friends Pub

parking lot. *Id.* ¶ 19. Rahdar was arrested by Officer Lobo for violating a local ordinance prohibiting fireworks. *Id.* After arriving at jail, Officer Lobo placed his knee on Rahdar's chest. *Id.* ¶ 20.

The fourth arrest occurred on February 5, 2021. *Id.* ¶ 21. After noticing Officer Cordero parked in the Friends Pub parking lot, Rahdar approached the vehicle and began videoing the officer. *Id.* Cordero called for backup and several other officers arrived at the parking lot. *Id.* ¶ 27. Officer Price then arrested Rahdar for obstructing a highway or passageway under Texas Penal Code §42.03. *Id.* ¶¶ 23–24.

In August 2022, the plaintiffs sued the City of Friendswood, the Officer Defendants, the Fire Marshal Defendants, and the Friendswood chief of police, Bob Wieners. Dkt. 1. The court dismissed the claims against Chief Wieners, Dkt. 46, and the plaintiffs amended their complaint. Dkt. 54.

The plaintiffs bring claims against the Officer Defendants and Fire Marshal Defendants for violations of their Fourth, Fifth, and Fourteenth Amendment rights stemming from excessive force, false arrest, and failure to intervene. *Id.* ¶¶ 60–65; 76–84. The plaintiffs also pursue a *Monell* claim

against the City of Friendswood. *Id.* ¶¶ 66–76. The defendants have moved to dismiss all claims. Dkt. 55.

## II. Legal Standards

### A. Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim is facially plausible when the pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* (citation omitted). The court does not "strain to find inferences favorable to the plaintiffs" nor does it "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (quoting *Westfall v. Miller*, 77 F.3d 868, 870 (5th Cir. 1996), and *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 406 (5th Cir. 2001)). Naked assertions and formulaic recitals of the elements of a claim will not suffice. *Iqbal*, 556 U.S. at 678. Even if the facts are well-pleaded, the court must still determine plausibility. *Id.* at 679. And though the court is limited to considering just the complaint and its attachments, it may take judicial

notice of matters of public record. *Luman v. Diaz*, No. CV H-19-4920, 2020 WL 4818832, at *2 (S.D. Tex. Aug. 8, 2020).

## B. Section 1983

Section 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the constitution or laws of the United States. 42 U.S.C. § 1983. A complaint under § 1983 must allege that the acts complained of occurred under color of state law and that the complaining parties were deprived of rights guaranteed by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995).

A complaint under § 1983 must also allege that the constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 826 (1994). A claim under § 1983 may be brought against government employees in their individual or official capacities or against a governmental entity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)).

## C. Qualified Immunity

Section 1983 claims are subject to the affirmative defense of qualified immunity. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[T]he crux of the qualified immunity test is whether officers have fair notice that they are acting unconstitutionally." *Mullenix v. Luna*, 136 S. Ct. 305, 314 (2015) (per curiam) (quotations omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"When considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion to dismiss, the [c]ourt must determine whether 'the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'" *Rojero v. El Paso Cnty.*, 226 F. Supp. 3d 768, 776–77 (W.D. Tex. 2016) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). "Thus, a plaintiff seeking to overcome qualified immunity

must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648.

To determine whether qualified immunity applies, courts undertake a two-step analysis. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). "Courts have discretion to decide the order in which to engage these two prongs." *Id.* at 656. First, the court asks whether the officer in fact violated a constitutional right. *Id.* at 655–56. Second, the court asks "whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The "court may rely on either prong of the defense in its analysis." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "To say that the law was clearly established, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (internal quotation marks omitted). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his

actions were proper." *Callahan*, 623 F.3d at 253.

### D. Municipal Liability

Municipal liability under § 1983, commonly called a *Monell* claim, requires proof of three elements: (1) an official policy or custom; (2) promulgated by a municipal policymaker; (3) which was the "moving force" behind the violation of a constitutional right. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019); *Piotrowski v. City of Houston* (*Piotrowski* II), 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Municipal liability under § 1983 cannot be predicated on *respondeat superior*. *Piotrowski* II, 237 F.3d at 578.

Instead, "it is when the execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under section 1983." *Monell*, 436 U.S. at 694. Therefore, "isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski* II, 237 F.3d at 578 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)); *McKee v. City of Rockwall*, 877 F.2d 409, 415 (5th Cir. 1989).

## III.  ANALYSIS

### A. Fourth Amendment Claims: False Arrest and Excessive Use of Force

The plaintiffs bring two categories of Fourth Amendment claims: (1) four separate allegations of false arrest and, (2) two separate allegations of excessive use of force. Dkt. 54 ¶¶ 60—65, 11, 20. Each event will be analyzed in turn.

#### 1. False Arrest

To sufficiently plead a constitutional claim for false arrest, a plaintiff must allege "that [the arresting officers] did not have probable cause to arrest him." *Anokwuru v. City of Houston*, 990 F.3d 956, 963 (5th Cir. 2021) (quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)). Probable cause exists when there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citations omitted). Probable cause is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It "requires only a probability or substantial chance of criminal activity, not an

actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983).

In the Fifth Circuit, a police officer's qualified-immunity defense defeats a plaintiff's allegation of arrest without probable cause where "a reasonable officer could have believed the arrest at issue to be lawful, in light of clearly established law and the information the arresting officers possessed." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)); *see also Huang v. Hill*, No. 3:15-CV-269, 2017 WL 68465 (S.D. Tex. Jan. 6, 2017), *aff'd*, 792 F. App'x 392 (5th Cir. 2020). "The plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime." *Good v. Curtis*, 601 F.3d 393, 401 (5th Cir. 2010).

The plaintiffs allege four separate instances of false arrest. The core of the court's inquiry is determining whether probable cause existed in each of the false-arrest allegations based on the totality of the circumstances.

The plaintiffs were first arrested on August 3, 2020, for refusing a "bar check" in violation of Texas Alcoholic Beverages Code §101.04. Dkt. 54 ¶ 6. The statute's language clearly provides, "the holder [of a license] consents to

the commission . . . or a peace officer entering the licensed premises at any time to conduct an investigation or inspect the premises." Tex. Alco. Bev. Code §101.04(a). "A person commits an offense if the person refuses to allow . . . a peace officer to enter a licensed or permitted premises." *Id.* at §101.04(b). By refusing access to the bar, it is beyond doubt that probable cause existed for the first arrest. The first false-arrest claim is dismissed.

The second arrest occurred on September 7, 2020, when Rahdar was arrested for resisting the prior (first) arrest. Dkt. 54 ¶ 62. However, the plaintiffs fail to name the arresting officer. *Id.* ("an officer [currently unknown] . . . arrested Rahdar for resisting the prior [false] arrest."). Here, the absence of a named defendant is ultimately fatal and further amendment would be futile under clear Fifth Circuit precedent.

The limitations period for a § 1983 action is determined by the state's personal-injury limitations period. *Whitt v. Stephens Cnty.*, 529 F.3d 278, 282 (5th Cir. 2008). In Texas, that period is two years. *Id.* Meaning, for the second arrest, the limitations period ran September 7, 2022. Generally, "plaintiffs may not amend their complaint to add additional defendants after the statute of limitations has expired." *Winzer v. Kaufman Cty.*, 916 F.3d

464, 471 (5th Cir. 2019); *F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994). However, Federal Rule of Civil Procedure 15(c) may allow a plaintiff to "relate back" a claim made against a newly added defendant to the original filing date. Fed. R. Civ. P. 15. The central feature of this rule is that the change must be "the result of an error, such as a misnomer or misidentification." *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998). No such misnomer or misidentification occurred here. The Fifth Circuit is clear that later substitution of a named defendant for a previously unnamed officer does not fall within Rule 15's narrow exception. *Winzer*, 916 F.3d at 471 (5th Cir. 2019); *Garcia v. United States*, No. 5:19-CV-16, 2019 WL 13191904, at *2 (S.D. Tex. Sept. 24, 2019) ("The Fifth Circuit has clearly held that an amendment to substitute a named party for a John Doe does not relate back under Rule 15(c)."); *Wilson v. City of Mission, Texas*, No. 7:18-CV-00399, 2020 WL 2079359, at *6 (S.D. Tex. Apr. 29, 2020) ("Plaintiff cannot sue 'unknown officers' and use these 'John Doe' claims to now substitute in [a new defendant] after the limitations period."). The plaintiffs cannot maintain their claim regarding the second arrest and any amendment would be futile. The false-arrest claim regarding the second arrest is dismissed.

The third arrest occurred on January 1, 2021. Rahdar was arrested for public discharge of fireworks on New Year's Eve—a clear violation of Friendswood City Ordinance § 30-140. The plaintiffs do not deny the violation, but rather simply observe that "many illegal activities of firework displays" also occurred within Friendswood city limits that night. Dkt. 55 ¶ 14. A violation of the law—including those done *en masse* or in good spirits—is a violation of the law.[1] There was probable cause for the third arrest.

The facts that gave rise to probable cause for the fourth arrest are less clear. On February 5, 2021, while standing in the parking lot of Friends Pub and videoing a police officer, Rahdar was arrested under Texas Penal Code § 42.03, which prohibits obstruction of highways, streets, sidewalks, and other public areas. Dkt. 54 ¶¶ 23–24; 55 ¶ 29. The Fifth Circuit has recently

---

[1] Though not asserted in the amended complaint, a liberal reading of these facts may give rise to a selective-enforcement claim. "[T]o successfully bring a selective prosecution or enforcement claim, a plaintiff must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right. [T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Lewis v. Smith*, No. 19-30689, 2022 WL 10965839, at *4 (5th Cir. Oct. 19, 2022) (internal citations omitted). No such improper motivation has been alleged. To the extent the plaintiffs bring a selective-enforcement claim for the third arrest, it is also dismissed.

emphasized, however, that "there is no probable cause to arrest under [Section 42.03] without a showing that the individual actually 'render[ed] [passage] impassable or . . . render[ed] passage unreasonably inconvenient or hazardous.'" *Herrera v. Acevedo*, No. 21-20520, 2022 WL 17547449, at *3 (5th Cir. Dec. 9, 2022) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017)). At present, taking the plaintiffs' factual allegations as true, it is difficult to imagine how Rahdar, acting alone, rendered access to a large suburban parking lot either wholly impassable, unreasonably inconvenient, or hazardous. At this stage, Rahdar has a plausible claim that there was no probable cause for arrest under Texas Penal Code § 42.03. *See Davidson*, 848 F.3d at 394 (reversing district court's summary judgement on false-arrest claims when probable cause for arrest under § 42.03 was based on the plaintiff walking in parking lot and inconveniencing others).

Further, there is ample "case law clearly establishing that an arrest without probable cause violates both First and Fourth Amendment rights." *Davidson*, 848 F.3d at 393; *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009) ("The Fourth Amendment right to be free from false arrest—arrest without probable cause—was clearly established at the time of [the]

arrests [in 2006].". It was clearly established at the time of Rahdar's fourth arrest that arrest without probable cause was a violation of the Fourth Amendment. Therefore, this final false-arrest claim overcomes qualified immunity and survives dismissal.

The court dismisses the false-arrest claims as to the first, second, and third arrest. But the defendants' motion to dismiss the fourth false-arrest claim, which took place on February 5, 2021, is denied.

### 2. Excessive Force

Interpreting the complaint liberally, the plaintiffs bring two separate excessive-use-of-force claims—both involving Fred Rahdar. Though unclear from the face of the complaint under which amendment these claims are brought, the court will analyze Rahdar's excessive-use-of-force claims under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."). Rahdar's first claim is for forceful handcuffing during the first

arrest. Dkt. 54 ¶ 11. The second claim is for an officer placing a knee to Rahdar's chest while at the jailhouse following his third arrest. Dkt. 54 ¶ 20.

To state a claim for excessive force, a complaint must allege "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (quoting *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 487 (5th Cir. 2001)). The injury in question need not be "significant," but "must be more than *de minimis.*" *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Courts should consider with "careful attention to the facts and circumstances of each particular case" including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

On the face of the complaint, neither incident rises to the level of excessive force. First, "[t]ight handcuffing alone, even where a detainee sustains minor injuries, does not present an excessive force claim." *Templeton v. Jarmillo,* 28 F.4th 618, 622 (5th Cir. 2022); *see also Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). A different result may occur where malice is sufficiently alleged. *Glenn,* 242 F.3d at 314. But Rahdar simply asserts his shoulder was injured in the course of the handcuffing. Without more, these allegations do not rise to the level of an excessive-force claim under the Fourth Amendment. The first excessive-use-of-force claim is dismissed.

The second allegation also fails to plead significant facts to deem the use of force unreasonable. When assessing a § 1983 claim, "[a]llegations that are merely conclusory, without reference to specific facts, will not suffice." *Hancock v. City of Corpus Christi*, No. 2:17-CV-327, 2018 WL 11472794, at *4 (S.D. Tex. Apr. 20, 2018) (quoting *Priester v. Lowndes Cty*., 354 F.3d 414, 420 (5th Cir. 2004)). The only facts alleged in the complaint is that Officer Lobo "placed his knee on Rahdar's chest" after arriving at the jail following the third arrest. Dkt. 54 ¶ 20. Further details about the events that led to the

use of force, degree of force used, and injuries sustained are wholly absent from the complaint. Plaintiffs must support legal conclusions with factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Further, the plaintiffs have failed to plead that *any* injury resulted from this second incident. The Fifth Circuit recently emphasized that the injury requirement is "a sliding scale, not a hard cutoff." *Buehler v. Dear*, 27 F.4th 969, 982 (5th Cir. 2022). "This approach treats the degree of injury—even if minor—as interrelated to the reasonableness and excessiveness of the officer's force." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022). Nevertheless, the plaintiff still must show he "has suffered some injury" resulting from the unreasonably excessive force. *Buehler,* 27 F.4th at 982. The only physical injury Rahdar suffered was sustained during the first arrest. Dkt. 54 ¶ 11. He alleges no psychological injury directly stemming from the knee to the chest. Absent *any* facts establishing an injury or the unreasonableness of the force, the second use-of-force claim must be dismissed.

## B. First Amendment Claims: Retaliatory Arrest and Retaliatory Use of Force

The plaintiffs complain that the actions of the police were part of a "planned campaign of police harassment" in retaliation of exercising First Amendment freedoms. Dkt. 54 ¶ 5, 84. Specifically, the plaintiffs allege two acts were retaliatory (1) the fourth arrest and, (2) the use of force following the third arrest. The court thus broadly construes the plaintiffs' live complaint as making two First Amendment claims: retaliatory detention and retaliatory use of force.

To make out a First Amendment retaliation claim, a plaintiff "must demonstrate that (1) he was engaged in constitutionally protected activity, (2) the officers' action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the officers' adverse actions were substantially motivated against Plaintiff's exercise of constitutionally protected conduct." *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017) (citations and internal quotations omitted). Additionally, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's

'subsequent injury.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)).

Under this standard, "it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." *Id.* (citations omitted). And "specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* "Where a citizen believes that he has been subject to a retaliatory detention or arrest, if there was reasonable suspicion or probable cause for an officer to seize the citizen, 'the objectives of law enforcement take primacy over the citizen's right to avoid retaliation.'" *Allen v. Cisneros*, 815 F.3d 239, 244–45 (5th Cir. 2016) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 261–62 (5th Cir. 2002)).

## 1. Retaliatory Arrest

Reading the complaint liberally, the plaintiffs allege the fourth arrest was in retaliation of Rahdar videoing Officer Cordero while he was parked in his vehicle. Dkt. 54 ¶ 81. The Fifth Circuit has recognized that the First Amendment protects a person's right to video the police conducting their duties in public. *Turner v. Lieutenant Driver,* 848 F.3d 678, 689–90 (5th

Cir. 2017). The First Amendment also "protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987).

The plaintiffs sufficiently allege a retaliatory-arrest claim at this stage of the proceedings. First, Rahdar was engaging in constitutionally protected activity when he videoed Officer Cordero sitting in his vehicle. *Turner*, 874 F.3d at 847 (5th Cir. 2017) ("[T]he principles underlying the First Amendment support the particular right to film the police."); *Flores v. Rivas*, No. 18-CV-297, 2019 WL 5070182, at *10 (W.D. Tex. Aug. 11, 2019). Second, according to the complaint, Rahdar was arrested immediately following his attempt to video the officers. Dkt. 54 ¶ 81. Being arrested for videoing and questioning police would clearly "chill a person of ordinary firmness from continuing to engage" in constitutionally protected activity. *Alexander*, 854 F.3d at 308. The third element, that the arrest was "substantially motivated" by a reaction to Rahdar's videoing, is tenuous at best, but passes muster at this early stage. The plaintiffs allege Officers Cordero and Price made the fourth arrest without probable cause—an allegation the court has identified as plausible at this stage. *See supra* III(A)(1). But the complaint provides no

details regarding the officers' reaction to being videoed, threats of arrest, or other actions designed to suppress Rahdar's First Amendment right to video the police. *Cf. Flores*, 2019 WL 5070182, at *16 (noting the arresting officer demanded the plaintiff stop filming in analyzing retaliatory-arrest claim). Nevertheless, given the dubious grounds for probable cause under Texas Penal Code § 42.03, the plaintiffs' allegations of retaliatory intent are plausible enough to survive dismissal. *See Flores*, 2019 WL 5070182, at *16 (finding plaintiff's retaliatory-arrest allegations sufficient under the First Amendment when officers arrested him without probable cause in response to filming and verbally challenging their activity); *Chapa v. City of Pasadena*, No. 4:21-CV-3444, 2022 WL 3091546 (S.D. Tex. July 15, 2022), *report and recommendation adopted*, No. 4:21-CV-03444, 2022 WL 3084475 (S.D. Tex. Aug. 2, 2022).

Turning to the qualified-immunity defense, it is clearly established that the First Amendment prohibits "adverse governmental actions against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). More specifically, it was clearly established at the time of this incident in 2021 that Rahdar had a

First Amendment right to record police activity, so long as he did so lawfully. *Noles v. Dial*, No. 3:20-cv-3677, 2021 WL 4255640, at *5 (N.D. Tex. Aug. 25, 2021), *report and recommendation adopted*, No. 3:20-cv-3677, 2021 WL 4244780 (N.D. Tex. Sept. 17, 2021) (collecting cases). Accordingly, the defendants are not entitled to dismissal of the retaliatory-arrest claim.

### 2. Retaliatory Use of Force

Because both of the plaintiffs' excessive-use-of-force claims fail, the retaliatory-use-of-force claims fall away as well. *See Burbridge v. City of St. Louis*, 430 F. Supp. 3d 595, 614 (E.D. Mo. 2019) ("[Plaintiff's] claim for excessive force against the Defendant officers fails . . . thus her claim for First Amendment retaliation as to Defendant officers' use of force also fails."); *Lupis v. City of Texas City, Texas*, No. 3:22-CV-101, 2023 WL 4864850, at *7 (S.D. Tex. Mar. 29, 2023). Additionally, even if the use of force was excessive, the complaint provides no basis for a finding that Rahdar's constitutionally protected actions were the "but-for" cause of the force used against them. Once again, the incident involving the alleged knee placed on Rahdar's chest is completely devoid of factual context. *See* Dkt. 54 ¶ 20. Without providing the court the necessary context in which to analyze either

the protected activity or the alleged wrongful motivation, the court will not accept the plaintiffs' threadbare conclusion that the Officer Defendants used force with "the evil motive to punish Rahdar." Dkt. 54 ¶ 84. The retaliatory-use-of-force claim is dismissed.

### C. Fourteenth Amendment Claims: Equal Protection

The plaintiffs bring an equal-protection claim based on their status as Iranian immigrants. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (internal quotation marks omitted).

Here, the plaintiffs assert no facts to support an equal-protection claim. The plaintiffs merely allege the complained-of arrests and use of force were wrongful and discriminatory without providing any evidence of animus or discrimination. The plaintiffs' equal-protection claims are therefore dismissed. *Propes v. Mays*, 169 F. App'x 183, 185 (5th Cir. 2006) ("A prisoner's vague and conclusory allegations that his equal protection rights have been violated are insufficient to raise an equal protection claim."); *See*

*Alexander v. Linthicum*, No. CV H-22-3749, 2023 WL 3938881, at *3 (S.D. Tex. June 9, 2023).

### D. Fifth Amendment Claims

The plaintiffs also bring claims for violations of the Fifth Amendment. Dkt. 54 ¶¶ 1, 2, 61, 82. These claims fail as a matter of law as the Fifth Amendment "applies only to violations of constitutional rights by the United States or a federal actor." *Ristow v. Hansen*, 719 F. App'x 359, 364 (5th Cir. 2018). Neither Friendswood (a municipality) nor any of the named officers or fire marshals (municipal employees) are federal actors. Dkt. 54 ¶¶ 30–54. The Fifth Amendment does not apply.

### E. Bystander Liability

The plaintiffs allege that several officers–Kulhanek, O'Barr, Price, Yodzis, Caballero, Wilkerson, Ruthstrom, J.R., and Rogers—were present at the fourth arrest and "willfully participated through active observation and monitoring." Dkt. 54 ¶ 27. "An officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v.*

*Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (*quoting Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002)). "Personal involvement is an essential element" of demonstrating liability under § 1983. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

The plaintiffs' factual allegations do not support a conclusion that any of these officers would appreciate the nature of the arrest. According to the complaint, these officers were called as back up and monitored the parking lot during the arrest. Dkt. 54 ¶¶ 23, 27. It is uncertain whether these officers had knowledge of the nature of the arrest, much less knowledge that the arrest allegedly violated a constitutional right. The officers' mere presence at an alleged false arrest is insufficient to support a bystander claim, even at the motion-to-dismiss stage. *Chapa*, 2022 WL 3091546, *10; *Carr v. City of Spring Valley Vill.*, No. 19-20373, 2022 WL 1553539, at *4 (5th Cir. May 17, 2022) (affirming dismissal when complaint did not sufficiently allege bystander officer's knowledge of constitutional violation).

The plaintiffs have also failed to overcome qualified immunity. *See Howard v. City of Houston*, No. 21-CV-1179, 2022 WL 479940, at *12–13 (S.D. Tex. Feb. 16, 2022) (granting qualified immunity because plaintiff

failed to demonstrate any reasonable officer would know he was required to intervene in light of Fifth Circuit law); *Heckford v. City of Pasadena*, No. 20-CV-4366, 2022 WL 209747, at *10 (S.D. Tex. Jan. 21, 2022) (granting qualified immunity when evidence did not show officers were present or had the opportunity to intervene, despite denying qualified immunity as to the officers that were directly involved in unconstitutional conduct). The plaintiffs' failure-to-intervene claim is dismissed.

### F. Municipal Liability

Friendswood is a municipality that cannot be held liable under § 1983 "unless action pursuant to [an] official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978). To establish municipal liability under § 1983, a plaintiff must prove three elements: "a policymaker; an official policy [or custom]; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694). In other words, a plaintiff must show "a direct causal link" between the policy and the violation. *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (quotation omitted).

The plaintiffs allege the excessive use of force against Rahdar was the result of the "policy, practice, and custom of the City of Friendswood." Dkt. 54 ¶ 70. But the existence of a constitutional violation under § 1983 is foundational to any municipal-liability claim. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Self v. City of Mansfield*, 369 F. Supp. 3d 684, 696 (N.D. Tex. 2019). Because the court has already determined there was no constitutional violation for excessive use of force, there can be no claim for *Monell* liability against Friendswood. As this is the only claim brought against the municipality, Friendswood is entitled to dismissal.

\*   \*   \*

For the reasons stated above, the court grants the motion to dismiss, Dkt. 55, on all but the false-arrest and retaliatory-arrest claims arising from the arrest on February 5, 2021; as to those claims, the motion is denied.

Signed on Galveston Island this 22nd day of January, 2024.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

28/28