Case 3:22-cv-00280   Document 119   Filed on 03/14/25 in TXSD   Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
March 14, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| FRED RAHDAR, *et al.*, | § | |
| Plaintiffs. | § § § | |
| V. | § | CIVIL ACTION NO. 3:22-cv-00280 |
| CITY OF FRIENDSWOOD, *et al.*, | § § § | |
| Defendants. | § § | |

# MEMORANDUM AND RECOMMENDATION

Plaintiffs Fred Rahdar and his wife, Kobra Ghorbani, are owners of Friends Pub. On February 5, 2021, Rahdar saw Friendswood Police Department ("FPD") Sergeant Michael Cordero sitting inside his unmarked police vehicle in the parking lot near Friends Pub. When Cordero exited his vehicle and entered a nearby business, Rahdar and a co-worker positioned their automobiles to block Cordero from leaving the premises. After 12 minutes inside, Cordero returned to his car. He was boxed in and unable to move his vehicle. Police later arrived at the scene and arrested Rahdar for obstructing a highway or other passageway in violation of § 42.03 of the Texas Penal Code.

Shocked that law enforcement would arrest Rahdar for deliberately blocking Cordero's police vehicle without justification, Plaintiffs filed this lawsuit. Defendants have moved for summary judgment on Rahdar's Fourth Amendment false arrest claim and First Amendment retaliation claim based on qualified immunity. *See* Dkt. 70. Having reviewed the briefing, the record, and the applicable law, I recommend the motion for summary judgment be granted.

## BACKGROUND

In the First Amended Complaint, Plaintiffs allege that Defendants—the City of Friendswood and more than 20 FPD officers and Friendswood fire marshals—violated their First, Fourth, Fifth, and Fourteenth Amendment rights. These claims

relate to four separate police interactions from July 2020 to February 2021. Plaintiffs insist these incidents represent a "concerted campaign of official harassment." Dkt. 54 at 2. Defendants moved to dismiss the lawsuit on the pleadings. *See* Dkt. 55. On January 22, 2024, Judge Jeffrey V. Brown partially granted Defendants' Motion to Dismiss, dismissing all claims brought against the City of Friendswood. *See* Dkt. 62 at 28. Judge Brown also dismissed all of Plaintiffs' claims against the individual defendants except for Rahdar's Fourth Amendment false arrest claim and First Amendment Retaliation claim, both arising out of the February 5, 2021 arrest.[1] *See id.* Defendants now move for summary judgment. *See* Dkt. 70.

After Defendants filed their motion for summary judgment, Rahdar sought to depose former FPD Officer Jesse Beckwith. *See* Dkt. 83. I granted the request, *see* Dkt. 98, and the deposition took place in late 2024. After the deposition, the parties submitted additional summary judgment briefing. *See* Dkts. 104, 111. The summary judgment record is now complete.

The summary judgment record contains a video taken on February 5, 2021, from a surveillance camera aimed at the shopping center parking lot. That video perfectly captures what occurred on that date in the parking lot. Those events are described below.

On the afternoon of February 5, 2021, Cordero drove an unmarked FPD blue Ford Explorer Sports Utility Vehicle to get his haircut at Q-Cuts, which is located a few doors down from Friends Pub. Cordero arrived in the parking lot at 1:17 p.m., and parked in front of Q-Cuts in a middle row of the half-empty parking lot. Dkt. 70-2 at 00:14:43. Cordero's vehicle is circled in the photo below:

---

[1] Because "Ghorbani was not arrested on February 5, 2021, nor was she subjected to any other deprivation of her rights" that day, Ghorbani concedes the only claims arising out of the February 5, 2021 arrest belong to Rahdar. Dkt. 85 at 2 n.3.



*Id.*

At 1:55 p.m., while Cordero sat in the unmarked SUV and waited for the availability of the barber to cut his hair, Rahdar walked toward Cordero's vehicle. *Id.* at 00:53:34. For several minutes, Rahdar walked around Cordero's vehicle, filming the scene with his cell phone. *Id.* at 00:53:34–00:57:11. Rahdar yelled at Cordero through the closed car window to leave the premises, claiming the parking lot was private property. Dkt. 70-28 01:05–01:20. Seated in the driver's seat with the windows rolled up, Cordero did not interact with Rahdar. Cordero did, however, use his cell phone to record what was happening. Dkt. 70-22. After several minutes, Rahdar returned to Friends Pub and exited the view of the surveillance video. Dkt. 70-2 at 00:55:19. At 2:01 p.m., Cordero stepped out of the unmarked police vehicle and walked toward Q-Cuts for his haircut. *Id.* at 00:58:43. Then, at 2:03 p.m., a white Ford Mustang drove up behind Cordero's police vehicle.



*Id.* at 01:00:52. Despite many vacant parking spaces located throughout the parking lot, the Ford Mustang pulled into the parking space directly behind Cordero's police vehicle.



*Id.* at 01:01:16. A female stepped out of the Ford Mustang at 2:04 p.m. *Id.* at 01:01:36. At his deposition, Rahdar identified the female as Jazmine Lowery, one of his employees at Friends Pub. *See* Dkt. 70-9 at 22–23.

Less than a minute after Lowery parked the Ford Mustang behind Cordero's police vehicle, and as Lowery was returning to Friends Pub, Rahdar drove his white pickup truck into the parking lot.



Dkt. 70-2 at 01:01:48. Rahdar parked perpendicular in front of Cordero's police vehicle, positioning his truck directly in front of traffic driving in the opposite direction.



*Id.* at 01:01:57. Rahdar claims that he parked in this manner because he wanted to film the situation "and see what[ was] going on." Dkt. 85-12 at 28. Rahdar further testified that he did not see Cordero exit the SUV before he parked in front of Cordero's vehicle. *See id.* at 27. Nonetheless, Rahdar readily admits that his "vehicle [was] in a place where it was blocking Sergeant Cordero's vehicle's exit from the parking space." *Id.* at 26–27.

At 2:13 p.m., Cordero exited Q-Cuts and entered into the surveillance camera's view. Dkt. 70-2 at 01:11:13. As Cordero approached his vehicle, he noticed Rahdar's white truck blocking his SUV and stopped. *Id.* at 01:11:13–01:11:19. Cordero took a few steps back and started to record the situation with his cell phone before continuing to walk toward his SUV. *Id.* at 01:11:20–01:11:43. Cordero entered his vehicle at 2:14 p.m., and saw Rahdar sitting in the driver's seat of the white truck. *Id.* at 01:11:46. Because Rahdar's truck blocked Cordero's vehicle from the front and the Ford Mustang blocked Cordero from the back, Cordero could not drive his SUV out of the parking lot. After entering his vehicle, Cordero used his police radio to request officer backup at his location.

Both Rahdar and Cordero remained in their parked vehicles for several minutes. At 2:17 p.m., a brown pickup truck attempted to park in a front row parking space, but was unable to do so because Rahdar's vehicle blocked the pickup truck's ability to enter the parking space. *Id.* at 01:14:57–01:15:11. Rahdar then moved his truck forward just enough to allow the brown truck to pull into a parking space. *Id.* at 01:15:12–01:15:20. Rahdar drove his truck forward several feet, which created enough space for Cordero to exit. Cordero, however, had already called for police assistance and decided not to move his vehicle.

At about 2:18 p.m., Rahdar stepped out of his truck. *Id.* at 01:15:20–01:15:27. He stood by the rear of his truck near Cordero's vehicle, and then moved to stand near the front of his truck. *Id.* at 01:15:27–01:17:16. Rahdar remained outside his truck for roughly two minutes before a number of police vehicles arrived on the scene. *Id.* at 01:17:16. Several officers approached Rahdar as Cordero exited his unmarked SUV. *Id.* at 01:17:30. Cordero directed Lieutenant James Price to arrest Rahdar. *Id.* at 01:17:32–01:18:05. Approximately two minutes later, officers walked Rahdar out of the surveillance camera's view and placed him in Officer Barry Yodzis's police car for transport to the Friendswood City Jail. *Id.* at 01:19:30. Officials subsequently charged Rahdar with obstructing a highway or other passageway in violation of Texas Penal Code § 42.03.

## LEGAL STANDARDS

### A.   SUMMARY JUDGMENT

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact issue is material "if its resolution could affect the outcome of the action." *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"To satisfy its burden, the party opposing summary judgment is required to identify specific evidence in the record, and to articulate the precise manner in which that evidence supports their claim." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (cleaned up). At this stage, I "consider all of the evidence in the record, but [I] do not make credibility determinations or weigh the evidence." *Austin v. Will-Burt Co.*, 361 F.3d 862, 866 (5th Cir. 2004). I "view all facts and inferences in the light most favorable to the nonmoving party." *Treme v. St. John the Baptist Par. Council*, 93 F.4th 792, 796 (5th Cir. 2024) (quotation omitted).

### B.   QUALIFIED IMMUNITY

"Qualified immunity shields a government official from liability based on his performance of discretionary functions." *Mote v. Walthall*, 902 F.3d 500, 505 (5th Cir. 2018) (quotation omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quotation omitted).

"A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (quotation omitted). "To negate a defense of qualified immunity and avoid summary judgment, the

plaintiff need not present absolute proof, but must offer more than mere allegations." *Id.* at 654 (quotation omitted).

"There are two aspects to qualified immunity: whether the plaintiff has alleged a violation of a constitutional right and whether the right at issue was 'clearly established' at the time of the alleged violation." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The first prong requires Plaintiffs to demonstrate there is a genuine dispute of material fact that Defendants violated a constitutional right. *See Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007). Defendants are entitled to summary judgment upon qualified immunity if Plaintiffs fail to create a genuine dispute whether the alleged conduct violated a constitutional right. *See Buehler v. Dear*, 27 F.4th 969, 981–82 (5th Cir. 2022).

## OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

As an initial matter, I must address Defendants' objections to a number of exhibits submitted by Plaintiffs in opposition to the Motion for Summary Judgment. *See* Dkt. 113.

First, Defendants object to the submission of entire deposition transcripts when only selected portions of those depositions are referenced in Plaintiffs' summary judgment response. Plaintiffs clarify that they have submitted the entire deposition transcripts simply as a courtesy and are not asking the court to look at anything other than specific portions of the depositions cited in their summary judgment response. *See* Dkt. 118 at 2–3 ("The testimony which Plaintiffs have cited [in their summary judgment response] is the only testimony which is included in the record from each of these exhibits."). Given that the parties agree, I confirm that I will only consider as part of the summary judgment record the portions of deposition testimony cited by Plaintiffs in their summary judgment response.

Second, Defendants object to Exhibits C, P, and EE. Plaintiffs do not even bother to respond to these objections. After review, I determine that the objections

lodged to these exhibits are meritorious, and I will strike Exhibits C (Dkt. 104-3), P (Dkt. 104-16), and EE (Dkt. 104-31) from the summary judgment record.

Third, Defendants raise a litany of objections to selected deposition testimony and other exhibits offered by Plaintiffs. "Because this evidence does not affect the disposition of the summary judgment motion, I deny the objection[s] as moot." *Lilly v. SSC Houston Sw. Operating Co.*, No. 4:20-cv-03478, 2022 WL 35809, at *3 n.2 (S.D. Tex. Jan. 4, 2022); *see also Banks v. Bell Helicopter Textron, Inc.*, No. 4:10-cv-653, 2011 WL 13291576, at *4 (N.D. Tex. Nov. 4, 2011) ("[B]ecause Bell is entitled to judgment as a matter of law even considering the objected-to evidence, the Court overrules Bell's objections as moot."); *Jones v. United Parcel Serv., Inc.*, No. 3:06-cv-1535, 2008 WL 2627675, at *6 (N.D. Tex. June 30, 2008) (denying objections to summary judgment evidence as moot because the evidence was "not central to the court's conclusions, and sustaining the parties' objections would not change the result").

Having addressed Defendants' objections to Plaintiffs' summary judgment evidence, I now turn to the merits of the summary judgment motion.

## ANALYSIS

### A.   RAHDAR'S FOURTH AMENDMENT FALSE ARREST CLAIM

Rahdar claims that his February 5, 2021 arrest violated his Fourth Amendment rights. The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. To establish a Fourth Amendment false arrest claim, Rahdar must demonstrate "that the arresting officers did not have probable cause to arrest him." *Anokwuru v. City of Houston*, 990 F.3d 956, 963 (5th Cir. 2021) (cleaned up); *see also Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) ("A false-arrest claim requires a showing of no probable cause."); *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) ("In order to make a lawful arrest, an officer must have probable cause to believe the suspect committed a crime."); *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007) ("[T]o prevail in a § 1983 claim

for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment."). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000). "Probable cause is not a high bar. A fair probability that the suspect has committed a crime is enough to establish probable cause. The likelihood that he has done so need not reach even the fifty percent mark." *Espinal v. City of Houston*, 96 F.4th 741, 745 (5th Cir. 2024) (cleaned up).

When an individual asserts a Fourth Amendment false arrest claim, qualified immunity will shield officers from suit "if a reasonable officer could have believed [the arrest at issue] to be lawful, in light of clearly established law and the information the arresting officers possessed." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (cleaned up). "[T]he plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime." *Good v. Curtis*, 601 F.3d 393, 401 (5th Cir. 2010) (quotation omitted). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter*, 502 U.S. at 227 (quotation omitted).

Although I must "construe all facts in favor of [Plaintiffs] as the nonmoving parties, [I] assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Ramirez v. Killian*, 113 F.4th 415, 421 (5th Cir. 2024) (quotation omitted). I must "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). A video "recording [may] corroborate a probable cause finding." *Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017).

Cordero directed Rahdar's arrest for the offense of obstructing a highway or passageway. The Texas Penal Code provides that:

10

> (a) A person commits an offense if . . . he intentionally, knowingly, or recklessly:
>
>> (1) obstructs a highway, street, sidewalk, railway, waterway, elevator, aisle, hallway, entrance, or exit to which the public or a substantial group of the public has access, or any other place used for the passage of persons, vehicles, or conveyances, regardless of the means of creating the obstruction . . . .
>>
>> . . . .
>
> (b) For purposes of this section, "obstruct" means to render impassable or to render passage unreasonably inconvenient or hazardous.

TEX. PENAL CODE § 42.03(a)(1), (b).

The surveillance video establishes that a reasonable police officer could view Rahdar's conduct as obstructing a "place used for the passage of persons, vehicles, or conveyances" in violation of Texas Penal Code § 42.03(a)(1). This is not a difficult call. The key facts evident from the video are not in dispute: Rahdar intentionally parked in front of Cordero's police vehicle, preventing Cordero from leaving the parking lot. The fact that Rahdar admits that his "vehicle [was] in a place where it was blocking Sergeant Cordero's vehicle's exit from the parking space" seals the deal. Dkt. 85-12 at 26–27.

"The act of remaining stationary—i.e., continuing to obstruct—is the critical fact" for determining whether an officer has probable cause to arrest someone for violating § 42.03. *Zinter v. Salvaggio*, 610 F. Supp. 3d 919, 937 (W.D. Tex. 2022); *cf. Sherman v. State*, 626 S.W.2d 520, 528 (Tex. Crim. App. 1981) (holding no obstruction occurred when a suspect only "caused a momentary hesitation of a vehicle"). Here, Rahdar caused more than a momentary hesitation because he remained parked in front of Cordero's unmarked police vehicle for a lengthy period of time—more than 13 minutes, almost four of which elapsed while Cordero sat in his vehicle unable to drive away. "[A] qualified immunity defense cannot succeed where it is obvious that a reasonably competent officer would find no probable

11

cause." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (quotation omitted).[2]

In sum, the totality of the circumstances establishes that the FPD officers had probable cause to arrest Rahdar on February 5, 2021, for violating Texas Penal Code § 42.03. Because the officers had probable cause to arrest Rahdar, they did not violate Rahdar's Fourth Amendment rights, and are thus entitled to qualified immunity. Accordingly, I recommend summary judgment be granted on Plaintiffs' Fourth Amendment false arrest claim in favor of Defendants.

### B. RAHDAR'S FIRST AMENDMENT RETALIATION CLAIM

Plaintiffs also assert a First Amendment retaliation claim. Plaintiffs allege the FPD officers arrested Rahdar on February 5, 2021, in retaliation for his public criticism of the FPD and the former FPD police chief.[3]

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "To prevail on a First Amendment retaliation claim, a plaintiff must show that he was engaged in constitutionally protected activity, the officer's actions injured him, and 'the officers' adverse actions were substantially motivated against Plaintiff's exercise of constitutionally protected conduct.'" *Degenhardt v. Bintliff*,

---

[2] Although Defendants' expert witness, police training expert Captain Albert Rodriguez, opined that "any prudent law enforcement officer could have believed grounds existed to arrest Rahdar for Obstructing a Highway or Other Passageway . . . in violation of Texas Pena Code Section[] 42.03," Dkt. 70-8 at 28, I give that evidence no weight. Reasonableness and probable cause are questions of law for which expert testimony is not required and should not be permitted. *See Fetty v. City of Baton Rouge*, 518 F. Supp. 3d 923, 930–34 (M.D. La. 2021).

[3] Rahdar claims he openly criticized the FPD and the former FPD police chief on numerous occasions. To voice his opinions, Rahdar utilized a billboard, a website, social media, and numerous interviews with local media outlets. He believes the February 5, 2021 arrest was simply part of an orchestrated effort "to silence Plaintiffs through harassment and acts of intimidation." Dkt. 104 at 30–31.

12

117 F.4th 747, 758 (5th Cir. 2024) (quoting *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017)).

A retaliation claim is available only "when non-retaliatory grounds are in fact insufficient to provoke the adverse consequences." *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (quotation omitted). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). "[I]t must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399. "Thus, in the context of retaliatory arrest . . . , to prove causation, a plaintiff generally must show that the officers lacked probable cause to make the arrest." *Degenhardt*, 117 F.4th at 758; *see also Spiller v. Harris County*, 113 F.4th 573, 579 (5th Cir. 2024) ("Generally, if probable cause exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment." (cleaned up)).

"Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 587 U.S. at 406. In order to qualify for the so-called "*Nieves* exception," "a plaintiff [must] present[] objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407. Just last year, the Supreme Court clarified that evidence of "virtually identical and identifiable comparators" is not required. *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024). "The only express limit we placed on the sort of evidence a plaintiff may present for th[e] purpose [of the *Nieves* exception] is that it must be objective in order to avoid 'the significant problems that would arise from reviewing police conduct under a purely subjective standard.'" *Id.* (quoting *Nieves*, 587 U.S. at 407). It is important to keep in mind that the *Nieves* exception

is extremely narrow and should not be used "as a crowbar for overturning the core of [the *Nieves* decision]—namely, that the existence of probable cause either always or nearly always precludes a suit [for retaliatory arrest]." *Gonzalez*, 602 U.S. at 667 (Alito, J., concurring).

As I have already discussed, FPD officers had probable cause to arrest Rahdar for obstructing a highway or other passageway in violation of Texas Penal Code § 42.03 when Rahdar used his vehicle to block Cordero's SUV, preventing Cordero from driving away. As a result, Rahdar may prevail on his First Amendment retaliatory arrest claim only if he presents objective evidence to show that his arrest falls within the *Nieves* exception.

In *Gonzalez*, the Supreme Court held that a survey showing that, in the last decade, no one had been charged with the crime for which plaintiff was arrested, was sufficient to qualify for the *Nieves* exception. *See Gonzalez*, 602 U.S. at 657–58. The Supreme Court observed that:

> Gonzalez's survey is a permissible type of evidence because the fact that no one has ever been arrested [in the past decade] for engaging in a certain kind of conduct—especially when the criminal prohibition is longstanding and the conduct at issue is not novel—makes it more likely that an officer *has* declined to arrest someone for engaging in such conduct in the past.

*Id.* at 658.

In an effort to show that the *Nieves* exception applies in light of *Gonzalez*, Plaintiffs offer the following evidence: (1) between February 5, 2011, and February 5, 2023, the FPD arrested only three individuals other than Rahdar for allegedly violating Texas Penal Code § 42.03; and (2) various FPD officers deposed in this litigation cannot recall ever arresting anyone for violating Texas Penal Code § 42.03. This evidence does not suffice.

Rahdar comes nowhere close to presenting "objective evidence" that FPD officers who have probable cause to make arrests for violations of Texas Penal Code § 42.03 typically exercise their discretion not to do so. *Nieves*, 587 U.S. at 407. Unlike Gonzalez, where the evidence showed that Texas's anti-tampering statute

14

had not been used a *single* time in 10 years in Bexar County to criminally charge someone for trying to steal a nonbinding or expressive document, the evidence here demonstrates that violations of Texas Penal Code § 42.03 *have* been enforced by the FPD. In the 12-year period identified by Plaintiffs, FPD made four arrests (including Rahdar's arrest) for violations of Texas Penal Code § 42.03. To counter these statistics, Plaintiffs argue that none "of these [other] arrests include facts which are remotely similar to what occurred to Mr. Rahdar." Dkt. 104 at 32. But that argument cuts against Rahdar. "When a plaintiff's alleged criminal conduct is egregious or novel, . . . the lack of similar arrests might warrant little weight." *Gonzalez*, 602 U.S. at 668 (Alito, J., concurring). As Justice Alito noted:

> If a plaintiff could evade the no-probable-cause requirement simply by submitting evidence that no one who engaged in an exact duplicate of his behavior had been arrested, courts will be flooded with dubious retaliatory arrest suits, and the *Nieves*'s exception would drain the no-probable-cause requirement of all force.

*Id.* (cleaned up).

Rahdar's argument that he has satisfied the *Nieves* exception by presenting testimony from several FPD officers who report that they have never arrested anyone for violating Texas Penal Code § 42.03 fares no better. The Fifth Circuit recently addressed this exact argument and cursorily dismissed it. Just because select FPD officers have "never made any arrest for violations of Texas Penal Code Section [42.03] . . . does not mean that [FPD] officers . . . did not *typically* exercise their discretion to make those arrests or that *no other person* was ever arrested for violating Texas Penal Code Section [42.03]." *Miller v. Salvaggio*, No. 23-50894, 2024 WL 5116799, at *8 (5th Cir. Dec. 16, 2024). Because "[t]he *Nieves* exception is most easily satisfied by strong affirmative evidence that the defendant let other individuals off the hook for comparable behavior" and Rahdar has failed to provide

any such evidence, his arrest does not fall within the *Nieves* exception. *Gonzalez*, 602 U.S. at 668 (Alito, J., concurring).[4]

The Supreme Court has explained that the *Nieves* exception applies when an individual is arrested for minor criminal conduct where police officers "typically exercise their discretion not to [arrest]." *Nieves*, 587 U.S. at 406. The prime example is jaywalking—a rather harmless offense for which most people are rarely arrested. *See id.* at 407. By contrast, the conduct present here—blocking in a police car and preventing an officer from performing his duties— places a police officer, not to mention the public, in a potentially dangerous situation. This is not a case that calls for the application of the *Nieves* exception. In a nutshell, Rahdar has failed to "surmount a very high bar" to overcome the no-probable-cause requirement. *Gonzalez*, 602 U.S. at 666 (Alito, J., concurring). I thus recommend that summary judgment be granted in favor of Defendants on Plaintiffs' First Amendment retaliation claim.

## PLAINTIFFS' MOTION TO REOPEN DISCOVERY FOR LIMITED PURPOSES

Before concluding this Memorandum and Recommendation, I must briefly address Plaintiffs' Motion to Reopen Discovery for Limited Purposes. *See* Dkt. 107. Plaintiffs ask this court to reopen discovery—which ended on August 1, 2024— to allow them to take three depositions relating to an incident that took place at a Starbucks on December 18, 2024. On that afternoon, Rahdar claims he received a phone call from FPD Officer Austin Caballero, who told Rahdar that he could not

---

[4] In a separate concurrence in *Gonzalez*, Justice Jackson, joined by Justice Sotomayor, provided examples of the types of objective evidence they believed could be used to prove that an individual was arrested when similarly situated individuals who engaged in the same conduct would not have been arrested. *See Gonzalez*, 602 U.S. at 675–76 (Jackson, J., concurring). Justice Jackson suggested that such evidence could include (1) "officers' employment of an unusual, irregular, or unnecessarily onerous arrest procedure"; (2) "the timing of and events leading up to a plaintiff's arrest": and (3) "if officers falsely document the arrest or include other indicia of retaliatory motive in arrest-related documents, that too might suggest meaningfully differential treatment." *Id.* at 676 (cleaned up). The summary judgment record is devoid of any such evidence.

visit a Starbucks located in Friendswood, Texas, because a criminal trespass complaint had been filed against him. Rahdar asserts that this "criminal trespass charge is another example of the continual targeting of [him] by Defendants as a result of [his] criticism of Defendants and FPD." Dkt. 104-34 at 2. To be clear, Caballero was not involved in Rahdar's February 2021 arrest.

As an initial matter, Plaintiffs' request to reopen discovery does not preclude the court from ruling on the pending Motion for Summary Judgment. To obtain a continuance of a summary judgment ruling to conduct additional discovery, the non-movant must "show[ ] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d). Plaintiffs have not filed a formal motion for continuance under Rule 56(d) to seek information related to the December 2024 incident at Starbucks, and they have submitted no affidavits or declarations in support of their Motion to Reopen Discovery for Limited Purposes. Failure to file a Rule 56(d) motion for continuance precludes a plaintiff from arguing on appeal that he did not have adequate time to conduct discovery. *See Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 887 (5th Cir. 1996) ("If [plaintiff] needed more discovery in order to defeat summary judgment, it was up to her to move for a continuance pursuant to rule 56([d]). Because she did not, she is foreclosed from arguing that she did not have adequate time for discovery.").

Putting aside Plaintiffs' failure to file a Rule 56(d) motion for continuance, , Plaintiffs have failed to demonstrate good cause to reopen discovery to obtain evidence relating to the December 2024 incident at Starbucks. A scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). In determining whether Plaintiffs have shown good cause under Rule 16(b)(4), I must consider, among other factors, the importance of the requested relief. *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003). Here, the requested discovery would not shed light on any of the issues involved in this lawsuit. As Defendants note: "Whatever happened at Starbucks on

17

December 18, 2024, has no bearing on the propriety of any Defendant officer's actions on February 5, 2021, after Fred Rahdar positioned his vehicle in front of Sergeant Cordero's police vehicle." Dkt. 114 at 2.[5]

For these reasons, Plaintiffs' Motion to Reopen Discovery for Limited Purposes is denied.

## CONCLUSION

For the reasons explained above, I recommend Defendants' Motion for Summary Judgment (Dkt. 70) be granted.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 14th day of March 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[5] As an aside, Rahdar recently filed a lawsuit—in the United States District Court for the Southern District of Texas, Galveston Division, against the City of Friendswood, various FPD officers, and two Starbucks employees—alleging various claims related to the December 18, 2024 incident at Starbucks. *See* Complaint, *Rahdar v. Caballero*, No. 3:25-cv-00051 (S.D. Tex. Feb. 24, 2025), ECF No. 1.